**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **DAVID E. CAMERON,** *et al.*, | : | |
| | : | Case No. 2:12-CV-00168 |
| Plaintiffs, | : | |
| | : | JUDGE ALGENON L. MARBLEY |
| v. | : | |
| | : | |
| **HESS CORPORATION,** *et al.*, | : | Magistrate Judge Elizabeth P. Deavers |
| | : | |
| Defendants. | : | |

**OPINION & ORDER**

## I.      INTRODUCTION

This matter is before the Court on Plaintiff David E. Cameron's Motion (Doc. 73) requesting reconsideration of the Court's Opinion and Order of September 24, 2013 regarding cross motions for summary judgment (Doc. 66).  Cameron argues that he has discovered new evidence – specifically, a "nearly identical oil and gas lease . . . that eliminates the ambiguity the Court initially found [in the Cameron lease]" – and that therefore review of the Opinion and Order is proper.  (Doc. 73-1 at 1). Defendants Hess Corporation, Hess Ohio Resources, LLC, and Hess Ohio Developments, LLC (collectively, "Hess") oppose the Motion for Reconsideration, on the grounds that Plaintiff has provided no valid reason for reconsideration, that the new lease is not properly before the Court, and that ultimately it does not support reconsideration.  (Doc. 79 at 1-3).

For the reasons stated herein, Cameron's Motion is hereby **DENIED**.

## II.      PROCEDURAL POSTURE

This case began with a civil Complaint filed in the Court of Common Pleas for Jefferson County, Ohio, on January 27, 2012, regarding two leases, the "Cameron Lease" and the "Griffiths Lease," seeking various declaratory judgments, damages, and invalidation of the leases.  (*Complaint*, Doc. 3).  The original Complaint also sought certification for class-action status.  (*Id.*).  On February 23, 2012,

Defendants removed to federal court. (Doc. 2). In November, Plaintiffs sought, and were granted, leave to file an Amended Complaint, which no longer styled itself as a class action. (Doc. 30). On December 12, Hess answered and filed various counterclaims. (Doc. 32).

Plaintiffs moved for summary judgment on January 11, 2013 (Doc. 37), and the Hess Defendants responded and moved for summary judgment on their counterclaims, on February 22 (Doc. 42). On March 18, Defendant Mason Dixon Energy filed its own motion for summary judgment. (Doc. 51). On September 24, 2013, the Court granted in part and denied in part Plaintiffs' and Defendants' cross motions for summary judgment. (Doc. 66). Hess moved for reconsideration (Doc. 68), which the Court denied (Doc. 72). Little over two weeks later, Plaintiff Cameron filed this Motion for Reconsideration. (Doc. 73). The matter has been fully briefed, and is ripe for review.

### III.   BACKGROUND

The facts of this matter are set forth at length in the Court's Opinion and Order of September 24, 2013 (the "Opinion and Order") (Doc. 66). In the Opinion and Order, the Court ruled in favor of the Griffith Plaintiffs on their motion for summary judgment regarding the Griffiths Lease, but found that the Cameron Lease was ambiguous as a matter of law.

The Cameron Lease (Doc. 37-6) contains, in relevant part, a "habendum clause," which provides for an initial five-year primary term, beginning June 27, 2008, and extending as long as oil and gas is produced from the land by the lessee. The lessee has the option to extend the lease for an additional five-year term, and as long thereafter as oil and gas is produced. Contemporaneously with the Cameron Lease, the parties also executed the "Order of Payment and Bonus and Rental Agreement" (the "Order of Payment") (Doc. 37-7), which provides that the Order of Payment terms control over any conflicting terms in the Cameron Lease document itself. The Order of Payment contains a "delay rental" provision, which provides that, if drilling did not commence on the land on or before twelve months from the start of the lease, the lease would terminate as to both parties. The clause provides for one "delay rental" payment, which would extend the lease for another twelve months. After this time, if drilling had still not

commenced, the lease would terminate.  The Order of Payment similarly provides for a one "delay rental" payment after the first year of the secondary term.

No drilling activities have taken place on the Cameron Property.  The lessee made four payments styled as "delay rental payments" from 2008 to 2012.  Cameron accepted and cashed the final payment "under protest."  The lessee did not make a payment to extend the lease for an additional five-year term.

In the Opinion and Order, the Court began its analysis by assuming without deciding, at the request of the parties, that there were no defects in the Lease or the Order of Payment, and that all required delay rental and extension payments had been made.  The Court found that both parties had presented reasonable interpretations that attempted to harmonize the terms of the Cameron Lease and Order of Payment, and accordingly held that the Cameron Lease was ambiguous.

This Court reasoned that it was difficult to reconcile the five-year primary term and five-year secondary term in the Cameron Lease, coupled with only one opportunity to make a delay rental payment in each term, with the language in the Order of Payment acknowledging that drilling operations may not have begun by the beginning of the secondary term.  This Court noted that the Order of Payment did not contain language authorizing annual "delay rental" payments throughout the applicable lease term, as appears, for example, in the Griffiths Lease, ¶ 4.  But on the other hand, argued Hess, the Court's construction of the lease should attempt to harmonize and give effect to every provision; the Court should thus read the documents to preserve the five-year primary term, and allow annual delay rental payments at least through that period.  Since both parties presented reasonable interpretations to resolve the apparent inconsistencies, the Court found the Cameron Lease and Order of Payment ambiguous as a matter of law.

Surveying the extrinsic evidence, the Court found support for its conclusion that the Lease was ambiguous.  The Court acknowledged Cameron's understanding, as stated in his deposition, that the primary term would last for five years, with "delay rental" payments payable for each year of thereof.  The Court also observed that the course of dealing between Cameron and Hess arguably supported a

finding in favor of Hess's interpretation, since Hess had tendered, and Cameron had accepted, four payments explicitly labeled as "delay rental."  Ultimately, the Court found that the ambiguity in the Lease created a disputed question of material fact as to the parties' intent, and the matter was for the finder of fact to decide.  Thus, the Court denied summary judgment.

Cameron now presents the Court with a new document, a "nearly identical oil and gas lease to the Cameron Lease," which, he argues, "eliminates the ambiguity the Court initially found [in the Cameron Lease]."  (Doc. 73-1 at 1).  Cameron explains that this "other" version of the Mason Dixon Lease only just came into the possession of counsel, and therefore any delay in presenting it should be excused.  (*Id.*).

Substantively, Cameron insists that this version "establishes the parties' intent outside the parties' conduct."  (*Id.* at 1).  The document, dated October 1, 2008, is "almost identical" to the Cameron Lease, and contains an identical version of the "habendum clause."  (*Id.* at 2).  The Order of Payment provision in this "other version," however, provides that the lessee may make "delay rental" payments annually throughout the primary and secondary terms.  (*Id.* at 3; Doc. 73-2 at 5).  The fact that this clause is present here, but not in the final, executed version, argues Cameron, proves that Mason Dixon, the predecessor-in-interest to Hess, "clearly held the understanding that the Cameron Lease [as executed] did NOT grant them delay rental rights on the terms Hess now asserts."  (Doc. 73-1 at 3-4) (emphasis in original).  Cameron maintains that this "other" version shows that Mason Dixon had the ability to draft an Order of Payment that provided for delay rental payments every year, and the fact that it decided to use a different version of this clause in the final, executed Order of Payment demonstrates the parties' intent to disallow such payments.  (*Id.* at 4).  Finally, Cameron adds that because Mason Dixon drafted the document, any remaining uncertainties should be construed against its successor Hess.  (*Id.* at 5).

## IV.  STANDARD OF REVIEW

A district court will reconsider a prior decision "if the moving party demonstrates:  (1) a clear error of law; (2) newly discovered evidence that was not previously available to the parties; or (3) an intervening change in controlling law."  *Owner-Operator Indep. Drivers Ass'n, Inc. v. Arctic Express,*

4

*Inc.*, 288 F. Supp. 2d 895, 900 (S.D. Ohio 2003); s*ee also Gen. Corp., Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (a judgment may also be altered or amended when necessary "to prevent manifest injustice").  In order to constitute "newly discovered evidence," the evidence "must have been previously unavailable."  *GenCorp, Inc. v. American Intern. Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999).  A court will not reconsider based on evidence "which in the exercise of reasonable diligence could have been submitted earlier."  *Kittle v. Ohio*, 2:05-CV-1165, 2007 WL 543447, at *1 (S.D. Ohio Feb. 15, 2007); *see also Buell v. Security General Life Ins. Co.*, 987 F.2d 1467, 1472 (10th Cir. 1993), *cert. denied*, 510 U.S. 916 (1993) ("[T]he movant must show either that the evidence is newly discovered [and] if the evidence was available at the time of the decision being challenged, that counsel made a diligent yet unsuccessful effort to discover the evidence.").

As this Court has recognized, "[d]istrict courts 'have authority both under common law and [Federal] Rule [of Civil Procedure] 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment.'"  *Gibney v. State Farm Fire & Cas. Co.*, No. 2:10-CV-00708, 2012 WL 6015961, at * 3 (S.D. Ohio Dec. 3, 2012) (quoting *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 Fed. App'x 949, 959 (6th Cir. 2004)).  This authority "vests in district courts significant discretion to afford such relief from interlocutory orders as justice requires."  *Id.*  (internal quotation omitted).  Significantly, "justice does not require that the district court [grant reconsideration] on an issue that would not alter the district court's prior decision."  *Rodriguez*, 89 F. App'x at 959-60.

## V.   ANALYSIS

Cameron asks the Court to revisit its Opinion and Order based on a document it has recently found which establishes, he argues, the clear intent of the parties with respect to the Cameron Lease.  Cameron's offering falls short of what is required for reconsideration.

First, Cameron has failed to excuse his late filing.  As justification for his tardiness, Cameron explains only that this version "only came into counsel's possession on October 16, 2013.  Had Cameron had access to this 'other' version earlier, he most certainly would have submitted it."  (Doc. 73-1 at 1).

No further reasoning has been offered. Cameron has provided no explanation for why this document was previously unavailable, how he came to find it now, or whether, with the exercise of reasonable diligence, the document could have been found in time for the Court to consider it together with the other evidence presented in the cross-motions for summary judgment.

In addition, Cameron asks the Court to consider a bare document, without authentication or validation. The Court has been provided with no information regarding the history of the document, its provenance, or its trustworthiness. Cameron has laid no factual foundation to establish why the document exists or how the Court should understand its terms, other than to urge the Court that the document constitutes a "smoking gun" which "destroys the 'reasonableness' of Hess' 'harmonization' argument." (*Id.* at 3). This is not enough. At summary judgment, parties may rely on, and the Court need consider, only "material . . . in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

Finally, even if the new document were properly before the Court, it need not grant Cameron's Motion when this new evidence would not alter its previous decision. The Court has already found that, after reviewing the four corners of documents, the Cameron Lease and Order of Payment are ambiguous as a matter of law. (Doc. 66 at 17). The document presented by Cameron, being extrinsic evidence, does nothing to change that conclusion. *See Shifrin v. Forest City Enterprises, Inc.*, 597 N.E.2d 499, 501 (Ohio 1992) ("courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement. Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning, will extrinsic evidence be considered in an effort to give effect to the parties' intentions.") (citations omitted).

Draft or alternate versions of a contract, as this "other" version purports to be, can be considered in an effort to discern the parties' intentions, when the contract itself is ambiguous. *Linton v. Linton*, No. 90-CA-35, 1991 WL 156525, at *2 (Ohio Ct. App. Aug. 14, 1991). According to Ohio law, however, "it is within the province of the jury, and not for the court, to ascertain and determine the intent and meaning

6

of the contracting parties in their use of uncertain and ambiguous language." *Bahamas Agr. Indus. Ltd. v. Riley Stoker Corp.*, 526 F.2d 1174, 1179 (6th Cir. 1975) (citing *Amstutz, Adm'r v. Prudential Ins. Co.*, 26 N.E.2d 454, 456 (Ohio 1940)); *see also Potti v. Duramed Pharms., Inc.*, 938 F.2d 641, 647 (6th Cir. 1991). Summary judgment is proper only if the Court can say that the extrinsic evidence demonstrates that there is "no genuine issue of material fact" regarding the proper interpretation of the contract. Fed. R. Civ. P. 56(c). There mere "present[ation] [of] conflicting evidence," on the other hand, is precisely the sort of factual dispute that "makes denial of summary judgment a court's only appropriate response." *Carter v. City of Wyoming*, 294 F. App'x 990, 992 (6th Cir. 2008). Only when one party's story "is blatantly contradicted by the record, so that no reasonable jury could believe it," is summary judgment appropriate. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

That is not the case here. While the "other" version may weigh in favor of Cameron's preferred interpretation, non-trivial evidence has been offered by Hess as well. As the Court previously explained, Mr. Cameron's understanding of the contract, as stated at his deposition, as well as the purported "delay rental" payments made by Hess and accepted by Cameron, "arguably support[] a finding that the parties intended" the interpretation that Hess espouses. (Doc. 66 at 18). Accordingly, summary judgment is not warranted. If the document can be properly authenticated, and is otherwise admissible at trial, Cameron remains free to argue this evidence to the finder of fact.

## VI. CONCLUSION

For the foregoing reasons, Cameron's Motion for Reconsideration (Doc. 73) is hereby **DENIED**.

**IT IS SO ORDERED.**

      /s/ Algenon L. Marbley
**ALGENON L. MARBLEY**
**UNITED STATES DISTRICT JUDGE**

 **DATED: November 25, 2013**